## THE CULGOA.

## W. & A. FLETCHER CO. et al. v. THE CULGOA (UNITED STATES, Intervener).

(District Court, D. New Jersey. July 3, 1923.)

1. Maritime liens ⟐37—Repairman held entitled to maritime lien on vessel superior to lien of unrecorded mortgage.

Maritime lien for repairs furnished vessel *held*, under Merchant Marine Act June 5, 1920, § 30, subsecs. P and Q (Comp. St. Ann. Supp. 1923, §§ 8146¼ooo, 8146¼p), superior to lien of mortgage held by government, which was not and could not be recorded because of noncompliance with named statute.

2. Maritime liens ⟐4—No lien for supplies furnished vessel after its seizure by United States marshal, in admiralty proceedings, can be acquired.

No lien for supplies furnished vessel after its seizure by United States marshal, in admiralty proceedings, can be acquired.

In Admiralty. Libel by the W. & A. Fletcher Company and another against the steamship Culgoa, etc., wherein the United States of America intervened. Commissioner's report determining priority of liens confirmed, and exceptions dismissed.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Frank A. Bernero, of New York City, of counsel), for W. & A. Fletcher Co.

Walter Schaffner, of New York City, and Walter G. Winne, of Hackensack, N. J., for the United States.

Frederick M. P. Pearse, of Newark, N. J., and Rumsey & Morgan, of New York City (John T. Carpenter, of New York City, of counsel), for Michael McAndrew and Certain Seamen.

Duncan & Mount, of New York City (William B. Mendes, of New York City, of counsel), for American Bureau of Shipping.

Foley & Martin, of New York City (William Shea, of New York City, of counsel), for Dyer Supply Co.

BODINE, District Judge. The Culgoa was formerly owned by the United States navy. An intervening petition was filed, setting forth that the United States held a preferred mortgage and was entitled to foreclose the same and to receive the proceeds from the sale of the vessel to the amount of its mortgage.

Proofs were taken before United States Commissioner John Wahl Queen, who reported in favor of the libelant, W. & A. Fletcher Company and the other claimants, and allowed the claims in full. To this report, exceptions have been filed.

The principal points urged by the government are that the Navy Department had a preferred mortgage, and that the W. & A. Fletcher Company, and other claimants, did not acquire maritime liens. The repairs for which the Fletcher maritime lien is claimed were made between September 26, 1922, and November 9, 1922, while the Culgoa lay at the libelant's yards in Hoboken, N. J. The Navy Department advertised the Culgoa for sale in pursuance of acts of Congress, in the spring or summer of 1922. Lucius H. Stewart's bid was accepted August 1, 1922. A bill of sale was executed and acknowledged on that day, but was not delivered. On August 28, 1922, Stewart executed and acknowledged a mortgage to the government purporting to be drawn under the Ship Mortgage Act of 1920 (Comp. St. Ann. Supp. 1923, §§ 8146¼jjj–8146¼rr). On October 6, 1922, the Secretary of the Navy forwarded to the Collector of Customs the bill of sale and the preferred mortgage, with instructions to record. The mortgage seems never to have been recorded. On August 28, 1922, Stewart took possession of the Culgoa and brought her to New York.

Subsection P of section 30 of the Merchant Marine Act of June 5, 1920 (Comp. St. Ann. Supp. 1923, § 8146¼ooo), provides as follows:

"Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by a suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

Subsection Q of section 30 (section 8146¼p) provides as follows:

"The following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel."

[1] There was no suggestion that Stewart was tortiously or unlawfully in possession of the vessel. It is apparent that he, as the person to whom the management of the vessel at the port of supply was intrusted, was authorized to place maritime liens on her for necessaries.

Neither the Fletcher Company, nor any of the other lien claimants, knew of the existence of the ship's mortgage, and reasonable inquiry would have disclosed nothing with respect thereto. The claims allowed by the Commissioner are entitled to a preference. The mortgage to the government to become a preference must be recorded. This has not been done, and cannot be done, since it does not comply with the requirements of the Merchant Marine Act; hence there can be no preference. Section 30 of the Merchant Marine Act, June 5, 1920.

[2] Obviously the libelant can acquire no lien for supplies furnished after the seizure of the vessel by the United States marshal in admiralty proceedings. See New York Dock Co. v. S. S. Poznan (D. C.) 297 F. 345, 1923 A. M. C. 413, at page 414.

The commissioner's report is confirmed, and the exceptions are dismissed.